**GREAT WEST CASUALTY COMPANY, Plaintiff-Appellee,**

v.

**Gizel NORRIS, Defendant-Appellant.**

**No. 83–8049.**

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Jack F. Witcher, Stephen E. Garner, Breman, Ga., for defendant-appellant.

J. Clinton Sumner, Jr., Carroll G. Jester, Jr., Rome, Ga., for plaintiff-appellee.

Before HILL, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

In this diversity action, Gizel Norris appeals from a district court declaratory judgment in favor of Great West Casualty Company, denying him coverage under an insurance policy Great West had issued to Curtis, Inc. The case invovles the interpretation of Ga.Code Ann. § 68–612 (recodified at O.C.G.A. § 46–7–12 (1982)), as that section relates to the insurance required for interstate carriers certified to operate on the Georgia highways. We affirm the judgment in favor of Great West.

### FACTS

Gizel Norris was at all times pertinent to this action the owner of a 1978 White tractor, which he leased to Curtis. Curtis is a motor carrier based in Colorado and operating only as an interstate carrier in Georgia. Record at 217–18.

To obtain a certificate to operate in Georgia, Curtis filed pursuant to § 68–612 a copy of its indemnity insurance policy with Great West.[1] That policy provided that Great West would

pay on behalf of the insured all sums which the insured shall become legally

---

1. As an interstate carrier, Curtis did not need to apply for a certificate of public convenience in Georgia, as is required of intrastate motor carriers. *See* Ga.Code Ann. § 68–633 (describing the registration requirements for interstate carriers) (recodified at O.C.G.A. § 46–7–16 (1982)). Code Ga.Ann. § 68–612 contains the bonding provisions referred to as a prerequisite to registration

obligated to pay as damages because of bodily injury, personal injury, or property damage caused by an occurrence to which this insurance applies arising out of the occupation of the named insured as stated in the declarations.

Record at 35. Curtis was the only "named insured" in the policy.[2] Relevant coverage provisions further stated:

If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law ... but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province
....

Record at 43.

On June 6, 1979, Gizel Norris was between hauls for Curtis. After performing maintenance work on the truck in preparation for an upcoming haul for Curtis, Norris took the truck out for a "road test." As he was returning to his home in Haralson County, Georgia, where he parked the truck between hauls, Norris noticed that his personal vehicle had rolled into the ditch beyond the house. Norris drove past the house and was using the truck in an effort to extricate his car from the ditch when a collision occurred between the truck and another automobile.

Horace Miller and Andrew Kelley were passengers in the automobile and were injured in the collision. Their injuries have led to four separate state court lawsuits against Norris and Curtis, one of which resulted in a $70,000 verdict in favor of Andrew Kelley and against both Norris and Curtis.[3] The Georgia appellate court affirmed the verdict against Norris, who carried no insurance individually, but reversed the verdict against Curtis, on grounds that at the time of the accident Norris was acting outside the scope of his employment. *Curtis, Inc. v. Kelley*, 167 Ga.App. 118, 305 S.E.2d 828, 829–30 (1983).[4]

Great West refused to defend or provide coverage for Norris in the various state

in § 68–633. Under these bonding provisions, discussed in more detail *infra,* the carrier must convince the Commission of its ability to satisfy a judgment rendered against it on account of the negligent operation of its vehicles within the state. The Commission will issue the certificate upon presentation of a bond, a policy of indemnity insurance, or sufficient proof of the carrier's ability to "self-insure" against any liability it might incur. The parties in the instant case do not dispute that Curtis was certified pursuant to §§ 68–612 and 68–633, and that the Curtis-Great West insurance policy was the basis for the Commission's certification.

2. Although Curtis was the only "named insured" under the policy, the policy did provide liability coverage for "any executive, director, or stockholder [of Curtis] while acting in the scope of his duties or insofar as he is or may be liable by reason of his occupying that position." Record at 40.

3. The remaining state court actions had not yet come to trial when the instant case was argued before this court.

4. The state court placed no weight on the fact that Norris was the truck owner and was leasing the vehicle to Curtis. *See Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973) (describing the "statutory employee" doctrine, under which a court may look through a lease agreement designating the lessor as an independent contractor and instead hold that the lessor is a "statutory employee," if it appears the parties designated the lessor as an independent contractor to avoid liability on a theory of respondeat superior). Rather, the court analyzed the case as if Norris and Curtis had a traditional master-servant relationship, which meant that Curtis was presumed liable for Norris' actions. Curtis was able to rebut that presumption because it was able to show that Norris, at the time of the accident, was not acting within the scope of his employment. *Id.* 305 S.E.2d at 830 ("[t]he test is not that the act of the servant was done during the existence of the employment, but whether the servant was serving the master") (citations and emphasis omitted). Similarly, for purposes of analysis, we will assume *arguendo* that Norris was an employee of Curtis at the time of the accident.

court actions. On January 28, 1982, it filed this action in federal District Court for the Northern District of Georgia. Great West sought a declaration that Norris as an individual was not covered under the Curtis-Great West policy and that Great West had no duty to defend Norris or pay any judgments rendered against him in proceedings arising out of the accident. Great West conceded that its policy did provide coverage for any liability assessed against Curtis resulting from the accident and has defended Curtis in the state court actions.

On October 1, 1982, the district court entered a joint consolidated pretrial order stipulating many of the essential facts. The court held a non-jury trial twelve days later and on December 23, 1982, issued an order in favor of Great West denying Norris coverage and holding that Great West had no duty to defend Norris. That order was amended slightly on January 18, 1983, and Norris filed timely notice of appeal to this court.

## DISCUSSION

Norris argues on appeal that the district court erred in holding that he was not covered under the Great West policy. To prevail, Norris would have to establish that he was covered under the Great West policy notwithstanding the fact that Curtis, the named insured in the policy, has been conclusively determined not to be liable in the state court actions because Norris was acting outside the scope of his employment at the time of the accident. *See supra* note 4 and accompanying text. Norris is thus left in the rather incongruous position of arguing that even though his "employer," Curtis, is not liable for injuries that occurred in the accident, Curtis' insurer nevertheless is liable.

Norris' primary argument[5] is predicated on the joint operation of the Georgia statutes and the clause in the insurance policy that modifies coverage as required by state law. The relevant statute provides that:

No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, ... for the protection of the public against injuries proximately caused by the negligence of <u>such motor carrier, its servants or agents.</u>

Ga.Code Ann. § 68–612 (emphasis added). Focusing on the underlined language, Norris argues that the use of the terms "servants or agents" extends the coverage required under the statute beyond traditional doctrines of respondeat superior. According to Norris, if the statute only extended to the motor carrier's liability, whether direct or under some theory of derivative liability, this additional language would be redundant. Thus, Norris argues that the statute requires coverage for any vehicle operated by a motor carrier for which certification is necessary, at any time that vehicle is being used by a servant or agent of the carrier, and without regard to the carrier's derivative liability under the doctrine of respondeat superior. Under this view, the Great West policy, which expressly incorporates the coverage requirements of state law, would cover Norris, as a servant or agent of Curtis, any time he is driving the truck and without regard to whether he was acting beyond the scope of his employment.

Norris has cited no authority in support of his creative reading of the Georgia statute. Nor do we find his reading persuasive. The statute, which requires the carrier to show its ability to satisfy any damage judgment flowing from its own negligence or the negligence of its servants or agents as a prerequisite to operating on the Georgia highways, *see supra* note 2, is clearly coextensive with the potential liabilities that the carrier faces from its Georgia operations. Under Georgia law, the carrier might be deemed responsible for its own negligence, or derivatively responsible for the negligent acts of its servants or agents acting within the scope of their employment. *See generally, Curtis, Inc. v. Kelley,* 167 Ga.App. at 118, 305 S.E.2d at 829–

---

5. Norris' other arguments require no discussion and are rejected as having no merit.

300 (discussing the doctrine of respondeat superior under Georgia law).

■ Furthermore, the statute contemplates self-insurance as an alternative to the bonding or indemnity insurance provisions. *See supra* note 1. "The Commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the motor carrier so warrants." Ga.Code Ann. § 68–612. It would be anomalous to suggest that, in the absence of language so stating, the carrier would be required to "self-insure" against injuries for which the carrier is not liable, *i.e.*, injuries caused by the negligence of servants or agents acting outside the scope of their duties to the carrier.

■ Finally, we note that under the provisions of § 68–612, the Georgia Public Service Commission must approve the carrier's insurance policy prior to the issuance of a certificate. The parties have stipulated that the Commission approved Curtis' insurance policy with Great West. That policy on its face did not provide coverage for Norris. Significantly, under the policy the only Curtis employees covered for their individual liability were officers, directors, and shareholders acting within the scope of their duties to the company. *See supra* note 1. It strains the credulity of this court to say that the Commission would have approved the Great West policy if, as Norris argues, the statute required an insurance policy for the individual liability of Curtis' employees acting outside the scope of their employment. The Great West policy implicitly denied this type of coverage for Curtis employees; the state commission charged with enforcing the statute nevertheless found the policy adequate. We defer to the Commission's implicit finding that the statute does not require the type of coverage for which Norris argues.

■ A plain reading of the statute simply will not support a holding that a carrier must provide individual liability coverage for its servants or agents while those agents are operating the carrier's vehicles outside the scope of their employment. Under the language of the Great West policy, Norris is not entitled either to defense or coverage by Great West on the facts of the instant case, where he was acting outside the scope of his duties to Curtis. Accordingly, the district court declaratory judgment in favor of Great West is

AFFIRMED.